# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

PAULA A. CLARK,        )
                             )
         Plaintiff,     )
                             )
         v.          )     Case No. CIV-13-405-SPS
                             )
CAROLYN W. COLVIN,    )
Acting Commissioner of the Social  )
Security Administration,      )
                             )
        Defendant.    )

## OPINION AND ORDER

The claimant Paula A. Clark requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born September 21, 1959, and was fifty-three years old at the time of the administrative hearing (Tr. 30, 124). She completed high school and has worked as a phlebotomist and a nurse's assistant (Tr. 33-35, 52, 155). The claimant alleges she has been unable to work since November 12, 2010, due to arthritis, fibromyalgia, degenerative disc disease, spurs on spine, anxiety, depression, and hypothyroidism (Tr. 154).

## Procedural History

On March 14, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 123-130). Her application was denied. ALJ Bernard Porter conducted an administrative hearing and determined the claimant was not disabled in a written opinion dated March 28, 2013 (Tr. 10-21). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal (Tr. 1-3). *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(c), *i. e*., she could sit/stand/walk for 6 hours in an 8-hour workday, but she could only occasionally perform reaching overhead, climb ramps and stairs, and should never climb ladders, ropes or scaffolds and should never crawl. She could push or pull as much as she could lift or carry. Additionally, she required a sit/stand option every thirty minutes, and could never be exposed to

unprotected heights, moving mechanical parts, or environments with temperature extremes. The ALJ also imposed a need for the claimant's time off task to be accommodated by normal breaks and the need to miss one day of work each month due to her medical conditions (Tr. 15). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, information clerk, house sitter, and nut assembler. (Tr. 20-21).

## Review

The claimant contends that the ALJ erred by: (i) failing to perform a proper determination at steps 4 and 5 of the evaluation process, (ii) failing to properly evaluate the medical and nonmedical source evidence, and (iii) failing to properly assess her credibility. None of these contentions have merit and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant had the severe impairments of lumbar disc disease, thoracic disc disease, fibromyalgia, obesity, anxiety, hypertension, hypothyroidism, and dysthymia (Tr. 12). Relevant medical records reveal that the claimant was treated regularly at Hussain's Family Practice from October 2008 through October 2010 and such treatment included medication refills for anxiety, depression, low back pain, knee pain, osteoarthritis, degenerative joint disease, fibromyalgia and hip pain (Tr. 239-261).

Dr. Theresa Horton conducted a mental status examination on June 21, 2011. Dr. Horton reported the claimant walked with the assistance of a cane, had a slow gait and appeared to sit comfortably, but did have difficulty rising from a seated position at the

-4-

end of the examination. Dr. Horton stated the claimant appeared genuine. On examination, Dr. Horton observed the claimant's thought processes were logical, organized, and goal directed; her mood was predominantly anxious and depressed; her affect was congruent and expressive; she was oriented to person, place, time and situation; her recall and memory were intact; her concentration was adequate; her judgment was appropriate; her insight was fair; and her effort was good (Tr. 278). Dr. Horton diagnosed the claimant with dysthymia, late onset and panic disorder. Dr. Horton's prognosis was the claimant appears capable of understanding, remembering and managing simple and complex instructions and tasks with adequate social and emotional adjustment into occupational and social settings (Tr. 279).

Dr. R. Schatzman conducted a physical examination on August 3, 2011. On examination, he observed normal thought processes; a granuloma annulare rash on her upper extremities; 6 out of 18 positive fibromyalgia points; full grip strength bilaterally; ability to perform both gross and tactile manipulation; pain and tenderness on her neck and back; full range of motion in the thoracic, lumbar-sacral, and cervical spine; and a slow careful gait as though in apparent pain, but did not require walking aids. He assessed her with obesity, hypertension, tobacco abuse, granuloma annulare, fibromyalgia, and depression (Tr. 281-282).

State agency physician Dr. Phillip Massad completed a Psychiatric Review Technique and found the claimant had mild limitations in restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace (Tr. 288-301).

State agency physician Dr. Luther Woodcock completed a Physical Residual Functional Capacity Assessment and found she could perform light work (Tr. 302-309).

The claimant sought treatment from Eastern Oklahoma Medical Center Emergency Room on November 15, 2011 for headache pain, and again on April 23, 2012 for increased back and neck pain (Tr. 319). A lumbar spine x-ray performed that same day revealed spondylosis and degenerative disc disease at L3-4 and L5-S1, facet arthrosis, artherosclerosis, and osteopenia (Tr. 322). An x-ray of claimant's thoracic spine revealed spondylosis and degenerative disc disease of the midthoracic spine, osteopenia, mild anterior compression deformity of approximately T7 vertebra, age indeterminate (Tr. 323). An x-ray of the claimant's cervical spine revealed facet arthrosis (Tr. 324).

Claimant sought treatment for neck pain at Fort Smith Mercy Hospital on May 16, 2012 (Tr. 337-353). She stated the pain started more than a week earlier, it was associated with lifting a heavy object and twisting, it was severe, and was aggravated by bending, twisting and position. She also stated she had numbness in her arms, tingling, and weakness when standing too long (Tr. 338-339). On examination by Dr. Matthew Dupree, claimant showed a decreased range of motion in her neck (Tr. 340). Discharge instructions included no heavy lifting or twisting, plenty of rest, ice and heat as needed, and use medications as directed (Tr. 338).

Additionally, both the claimant's daughter and a friend completed Third Party Function Reports based on the claimant's abilities. The claimant's daughter stated the claimant takes care of her husband by cooking and administering medication; cooks and

cleans daily and needs no encouragement to do so; goes outside daily; drives; shops for groceries once per week; and is able to pay bills, count change, handle a savings account and use a check book (Tr. 184-187). She further stated the claimant socially visits with her and calls family members but she doesn't go places often due to leg pain (Tr. 188-189). Additionally, she stated the claimant can't lift very much or walk very far, and does not handle stress or changes in routine well (Tr. 189-190). The claimant's friend stated the claimant takes care of her husband and drives him to doctor's appointments. Claimant's friend stated she does most of the claimant's household chores because the claimant can't do anything strenuous (Tr. 210-211). She also stated the claimant sometimes need accompaniment to go places, but she doesn't get out much due to pain (Tr. 212-213). Additionally, she stated the claimant can always pay attention, doesn't always finish what she starts, can follow written and spoken instructions, but does not handle stress well and handles changes in routine "okay" (Tr. 213-214).

At the administrative hearing, the claimant testified she is not able to walk very far, not able to stand, and can't sit for more than 30 minutes without having to stand up and move around. She stated these limits are caused by pain in her back and legs and her knee "giving out", all of which are the result of her back impairments (spurs on her spine, degenerative disc disease, arthritis, osteoporosis, narrowing of discs) (Tr. 37-38). When discussing medication, she indicated she takes a medication for her thyroid and Advil, but that Advil does not help (Tr. 39). As to her pain, she testified walking, standing, and sitting make her pain worse; her pain level on a bad day is a 10+; on a fairly good day her pain is between an 8 and 9 (Tr. 39-40). She further testified there is nothing besides back

pain and leg pain that prevent her from working (Tr. 40). In response to questioning, she stated she would have to get up and move around after sitting for 30 minutes, can stand for 15 minutes, can lift and carry no more than 10 pounds, would have to lie down at some point in an eight hour day, and can walk a half a block at a time (Tr. 40-41). Her typical day includes cooking, tending to her husband, visiting with family and friends, going to the post office, walking outside, and light housekeeping (Tr. 41).

In his written opinion, the ALJ summarized the medical evidence in great detail, including the claimant's hearing testimony. As to the claimant's lumbar disc disease, thoracic disc disease, and fibromyalgia, the ALJ found the treatment notes indicated she was stable and the physical findings were generally normal (Tr. 16). He reviewed the reports from the only imaging in the record and noted the x-rays showed spondylosis and multilevel degenerative changes, but the treatment notes indicated they were mild (Tr. 16). He also found that upon the claimant's repeat complaints of moderate back, neck and fibromyalgia pain, she continued to have normal physical findings and her treatment remained the same (Tr. 16, 17). As to her hypothyroidism and hypertension, the ALJ found treatment notes established she was stable, she was not experiencing a lack of energy or feeling cold, and since there were no adjustments to her medications, it was effective (Tr. 17). As to her obesity, he noted her Body Mass Index was 43.27 (Tr. 17). In terms of her mental impairments, he found the treatment notes indicated the claimant was stable (Tr. 17-18). The ALJ summarized in great detail the report of consultative examiner Dr. Schatzman and noted that despite exhibiting signs of pain and tenderness in her neck, Dr. Schatzman reported full range of motion in her cervical spine, thoracic

spine, and lumbar-sacral spine (Tr. 16-17). The ALJ also summarized in great detail the report of consultative examiner Dr. Horton and noted that despite having an anxious and depressed mood, Dr. Horton reported the claimant was fully oriented and displayed adequate concentration and appropriate judgment (Tr. 18). Additionally, the ALJ summarized the claimant's activities of daily living and indicated she described daily activities that were not limited to the extent one would expect, given her complaints of disabling symptoms and limitations (Tr. 18).

The claimant's first contention is that the ALJ failed to perform a proper determination at steps 4 and 5 of the sequential evaluation process. The ALJ's findings are set forth above. The Court finds the ALJ provided a detailed discussion of all the relevant evidence in the record and his opinion clearly indicates that he adequately considered the medical evidence of record in reaching his conclusions regarding the claimant's RFC. He specifically noted the various findings of the claimant's treating, consultative, and reviewing physicians, specifically the assessments noting lumbar disc disease, thoracic disc disease, fibromyalgia, obesity, anxiety, hypertension, hypothyroidism, and dysthymia, *then adopted* any limitations suggested in the medical record, *added more restrictive limitations* of his own, *and still concluded* that she could perform light work. When all the evidence is taken into account, the conclusion that the claimant could perform light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir.2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to

each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir.2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

Second, the claimant's contends that the ALJ failed to properly evaluate the medical and nonmedical evidence. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v)

whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of the medical opinions in the record meets these standards. Here, the ALJ noted Dr. Dupree's opinion that the claimant could not perform any heavy lifting or twisting, indicated he gave "some weight" to his opinion because it was consistent with the claimant's allegations that she experiences back pain and weakness, and then *adopted* his recommendation by limiting the claimant to a reduced range of light work (Tr. 14, 19). Additionally, the ALJ gave significant weight to mental consultative examiner Dr. Horton who opined the claimant could understand, remember, and manage both simple and complex instructions/tasks with adequate social and emotional adjustment into occupational and social settings because it was consistent with the medical evidence as a whole, showing the claimant was stable and generally without abnormal mental status findings, and then determined *additional* limitations were warranted and limited the claimant to unskilled work (Tr. 19). The ALJ gave little weight to the State agency medical consultants who opined the claimant could perform light work because the evidence suggested additional postural and environmental limitations were necessary to prevent exacerbation of the claimant's symptoms and also gave little weight to the State agency psychological consultants who opined the claimant's mental impairments were non-severe because he found the claimant's subjective complaints of depression and anxiety were partially credible and could have an impact on the claimant's ability to stay

on task. Not only did the ALJ evaluate every medical opinion in the record, he either adopted their limitations or expanded upon them based on the testimony and evidence in the record. The ALJ did not reject any opinion that contained limitations.

The claimant's final contention is that the ALJ failed to perform a proper credibility determination. A credibility determination is entitled to deference unless there is some indication that ALJ misread the medical evidence as a whole. See *Casias*, 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ noted in his written opinion that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible" but nonetheless *did* ultimately find the claimant "is at least partially credible as reflected in the above residual function capacity" (Tr. 18). Use of boilerplate language is generally disfavored, *see, e. g., Bjornson v. Astrue*, 671 F.3d 640, 645-646 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred

until ability to work is assessed without regard to credibility, even though it often can't be."), but this was not the sum total of the ALJ's analysis of the claimant's credibility. Elsewhere in the opinion, for example, the ALJ cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible, including: (i) medical records reflecting only moderate physical and mental limitations during the relevant time frame, (ii) treatment notes indicating the claimant was stable with her current treatment regimen, (iii) physical examinations with generally normal findings, (iv) the claimant's testimony of an active lifestyle, and (v) the claimant's lack of testimony pertaining to her mental impairments (Tr. 16-17). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 30th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**